USDC- BALTIMORE
'25 FEB 18 AM 9:52

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF MARYLAND

HD

Rcv'd by: AN

| | |
|---|---|
| WILL. J. HANNA, II | ) |
| | ) |
| On behalf of the Baltimore Lightning | ) |
| Professional Football Franchise and others | ) |
| Similarly Situated | ) |
| | ) Case # GLR 2 5 C V 0 4 9 6 |
| Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| INTERNATIONAL FOOTBALL ALLIANCE; | ) |
| JASON ADAMS, Director of Operations | ) |
| | ) |
| Defendants | ) |

**COMPLAINT**

The Pro Se Plaintiff in this matter, Will. J. Hanna, II, brings forth this complaint in U.S. Federal Court regarding the transfer of funds under fraudulent pretenses and/or means to defraud by putting forth a scheme to obtain funds under the guise of a professional football league.

The Plaintiff and others similarly situated cites **18 U.S. Code § 2314** in reference that the Defendants did in fact obtain and receive funds totaling more than the statutory amount $5,000. In this case, the Plaintiff and others suffered losses of more than $500,000 as a result of the scheme implemented by the Defendants.

## JURISDICTION

It is the Plaintiff's assertion that this Honorable Court has jurisdiction to hear and adjudicate this matter pursuant to the requirements of **28 USC 1331** which have been met. This statute gives federal courts jurisdiction only to those cases which "aris[e] under" federal law. 28 USC 1331. The Supreme Court has found that a " suit arises under the law that creates the cause of action," *American Well Works v. Layne*, 241 US 257 (1916), and therefore, only suits based on federal law, not state lawsuits, are most likely to create federal question jurisdiction, *Louisville & Nashville R. Co. v. Mottley*, 211 US 149 (1908). The Plaintiff files this initial complaint under 18 U.S. Code § 2314 and asserts that the Defendants committed acts of fraud that not only resulted in financial losses to the Plaintiff and others similarly situated.

## STATEMENT OF THE CASE

The International Football Alliance (hereinafter "the IFA") and Jason Adams, its chief executive, created a quasi-professional football league and began its recruitment of potential franchises in April, 2023. The league was intended as an "international" sports league in which its member franchises would receive certain benefits because of membership in the IFA, the league.

Since 2023, the league, at the direction of Jason Adams, did willfully and fraudulently devised a scheme to receive funds from potential franchise owners, to include the Plaintiff in this matter. This scheme involves persons across the United States and Mexico including, but not limited to: Portland, OR; Las Vegas, NV; Toledo, OH; Mexico City, Mexico, Guadalajara, Mexico; Costa Rica, Huntsville, AL; Tampa, FL; Baltimore, MD and potentially dozens of others.

Jason Adams, under the guise of the IFA, received tens of thousands of dollars from the Plaintiff and others. During the summer of 2024, this Plaintiff did in fact send Mr. Adams over $10,000 with the anticipation of specific services to be provided by Mr. Adams and the league. Ultimately, and to date, none of those proposed or promised services have even been conducted or provided. This is what the Plaintiff contends is and was the scheme to receive funds from the Plaintiff and others. Mr. Adams received over $60,000 from individuals in Mexico, over $25,000 from individuals in Las Vegas, NV, over $6,000 from individuals in Toledo, OH, over $20,000 from individuals in Portland, OR, over $40,000 from individuals in Huntsville, AL, over $20,000 from individuals in Tampa, FL. There is the potential that if continuing to operate this criminal enterprise, that others may be impacted. In that, the Plaintiff makes the case that in the alternative to this complaint, that a **Motion for Injunctive Relief** be incorporated into this complaint.

## CITATION

Under 18 U.S. Code § 2314 - Transportation of stolen goods, securities, moneys, fraudulent State tax stamps, or articles used in counterfeiting or fraudulently taken. Whoever transports, transmits, or transfers in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud; Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transports or causes to be transported, or induces any person or persons to travel in, or to be transported in interstate or foreign commerce in the

execution or concealment of a scheme or artifice to defraud that person or those persons of money or property having a value of $5,000 or more. The Plaintiff in this case contends that this matter meets the criteria to bring this complaint under 18 U.S. Code § 2314.

**DERIVITIVE DAMAGE CAUSED BY THE DEFENDANT – DEFAMATION OF THE PLAINTIFF**

The Plaintiff contends and will prove with certainty that the fraudulent scheme by the Defendant caused irreparable harm to the Plaintiff that resulted in the loss of investments and funding for the Plaintiff. In December, 2024, the Defendant published an online statement via Facebook and Instragram purporting that the Plaintiff operated "unprofessionally" and not to the standards of the "league." This patently false posting caused a derivative impact to the Plaintiff resulting in the loss of over $550,000 in investments and funding for the Plaintiff.

**Elements of Defamation/Libel**

The defamatory statement must be published or communicated to a third party. Under defamation law, "published" simply means the statement was heard or read by any person who is not the one making the statement or who the statement is about.

There is no requirement that the statement be printed. A defamatory statement can be published in any medium, e.g., a newspaper or book, posted online, or even spoken aloud to another person. The statement only needs to be communicated to a third person to satisfy this element. See Smith v. Maldonado, 72 Cal. App. 4th 637, 645 (1999).

**Element 2: Identification**

The defamatory statement must clearly identify the plaintiff. While the easiest way to identify the victim is by name, a person can also be identified by job title, photo, or other

contextual details or descriptions. For example, a statement that "the CEO of Company X embezzled funds" would likely be considered to adequately identify a party even without explicitly naming the individual. The key question is whether a reasonable person would understand the statement refers to the plaintiff. See <u>Elias v. Rolling Stone LLC, 872 F.3d 97 (2d Cir. 2017).</u>

**Element 3: Causes Harm**

The statement in question must cause some type of measurable damage to a person reputation, as opposed to being merely unflattering, annoying, irksome, or embarrassing. A statement that is defamatory tends to expose the plaintiff to shame, hatred, ridicule, or contempt or seeks to injure his business or reputation. Some statements like accusations of serious crimes or sexual misconduct are considered "defamatory per se," which means they are so inherently harmful to reputation that damages are presumed. For most other statements, a plaintiff must prove how the statement harmed their reputation in the community. See <u>Ringler Assocs. Inc. v. Maryland Cas. Co., 80 Cal. App. 4th 1165, 1180 (2000)</u>

**Element 4: Falsity**

To be actionable, a defamatory statement must be false. Truth is an absolute defense to a defamation claim. Proving a statement is false can be challenging if the statement is presented as an opinion or has an element of truth to it. Every detail of a statement does not need to be literally true, "substantial truth" is enough. A defendant only needs to show that the "gist" or "sting" of a statement is true to avoid liability. See <u>Masson v. New Yorker Magazine, Inc., 501 U.S. 496 (1991).</u>

**Element 5: Fault**

Finally, the plaintiff must show that the defendant was at fault in making the defamatory statement. The fault standard differs depending on whether the plaintiff is considered a private or public figure. For private figures, the defendant must have acted negligently, which means they did not exercise reasonable care in determining the truth of the statement before publishing it. Public figures like politicians and celebrities must meet a higher "actual malice" standard, proving the defendant made the statement knowing it was false or with reckless disregard for its truth. See New York Times Co. v. Sullivan, 376 U.S. 254 (1964).

One case that illustrates these elements is Greene v. Tinker, 332 P.3d 21 (Alaska 2014). The defendant posted on Facebook that the plaintiff, who was running for public office, had "a criminal history of identity theft." The statement was provably false, as the plaintiff had no criminal record. It was published to Facebook users, clearly identified the plaintiff by name, and accused her of a serious crime, conveying a defamatory meaning. As a candidate for public office, the plaintiff was considered a public figure, so she had to prove actual malice. The court found the defendant acted with reckless disregard for the truth since even a cursory online search would have shown the allegation was false.

As a result of the Defendant's defamatory and libelous publication, there was and still exists irreparable harm to the Plaintiff in the amount of at least $550,000. This is in addition to the thousands of dollars obtained by the Defendant fraudulently as noted in the pretext of this complaint.

**PLAINTIFF'S MOTION FOR IMMEDIATE EMERGENCY/PRELIMINARY INJUNCTIVE RELIEF**

Preliminary injunctions and immediate emergency injunctive relief are a type of legal remedy that courts usually employ while a claim is in process. The Plaintiff requests this relief to mitigate the irreparable harm caused by the Defendant's actions. Injunctive relief would prevent the Defendant from causing further harm to the Plaintiff and others similarly situated. The Plaintiff requests an Order from this Honorable Court halting the operations of the Defendant, Jason Adams and the International Football Alliance until the merits of this complaint can be heard in open court and the facts of this complaint can be substantiated. Halting the operations of the IFA (Defendant) would prevent any other potential harm to other U.S. citizens as the Plaintiff anticipates that its complaint may be amended to include other parties noted in the pretext of this complaint.

The Plaintiff contends that an immediate emergency injunction to halt operations of the IFA would allow the Defendant an opportunity to cure its debt to the Plaintiff or move forward with its response to this complaint. In the interest of justice for the Plaintiff and others similarly situated across the continental United States, the actions of the Defendant should be halted until a remedy has been determined.

**CONCLUSION**

The Plaintiff shall make the documented case that the Defendant in this matter, Jason Adams under the guise of the International Football Alliance, did in fact defraud the Plaintiff of thousands of dollars and caused irreparable harm the Plaintiff that resulted in the loss of over $550,000 which, in the Plaintiff's estimation, should be awarded to the Plaintiff in Summary

Judgment. The Plaintiff seeks remedy by this Court and directly and/or via alternative dispute resolution.

Submitted,

Will. J. Hanna, II

Pro Se, Plaintiff

## CERTIFICATE OF SERVICE

On this 14th day of February, 2025, the Plaintiff in the case served via electronic mail, a copy of the Plaintiff's Complaint to the Defendant at: jason@ifa.football.

Signed,

Will. J. Hanna, II

Pro Se, Plaintiff